UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| KENNETH McELWAIN,<br><br>                    Plaintiff,<br><br>        vs.<br><br>NANCY A. BERRYHILL, Acting<br>Commissioner, Social Security<br>Administration,<br><br>                    Defendant. | CIV. 15-5071-JLV<br><br><br>ORDER |

Plaintiff Kenneth McElwain filed a complaint appealing the final decision of Nancy A. Berryhill,[1] the Acting Commissioner of the Social Security Administration, finding him not disabled.   (Docket 1).   Defendant denies plaintiff is entitled to benefits.   (Docket 9).   The court issued a briefing schedule requiring the parties to file a joint statement of material facts ("JSMF").   (Docket 11).   The parties filed their JSMF.   (Docket 16).   For the reasons stated below, plaintiff's motion to reverse the decision of the Commissioner (Docket 19) is denied.

## FACTUAL AND PROCEDURAL HISTORY

The parties' JSMF (Docket 11) is incorporated by reference.   Further recitation of salient facts is incorporated in the discussion section of this order.

---

[1]Nancy A. Berryhill became the Acting Commissioner of Social Security on January 20, 2017.   Pursuant to Fed. R. Civ. P. 25(d), Ms. Berryhill is automatically substituted for Carolyn W. Colvin as the defendant in all pending social security cases.   No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

On February 8, 2012, Mr. McElwain filed an application for disability insurance ("DI") benefits under Title II supplemental social security income ("SSI") benefits under Title XVI, alleging an onset of disability date of March 11, 2011. (Docket 16 ¶ 1). On February 24, 2014, the ALJ issued a decision finding Mr. McElwain was not disabled. Id. ¶ 2; see also Administrative Record at pp. 23-39 (hereinafter "AR at p. ____"). The Appeals Council denied Mr. McElwain's request for review and affirmed the ALJ's decision. (AR at pp. 1-4). The ALJ's decision constitutes the final decision of the Commissioner of the Social Security Administration. It is from this decision which Mr. McElwain timely appeals.

The issue before the court is whether the ALJ's decision of February 24, 2014, that Mr. McElwain was not "under a disability, as defined in the Social Security Act, from March 11, 2011, [through February 24, 2014]" is supported by substantial evidence in the record as a whole. (AR at p. 39) (bold omitted); see also Howard v. Massanari, 255 F.3d 577, 580 (8th Cir. 2001) ("By statute, the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive.") (internal quotation marks and brackets omitted) (citing 42 U.S.C. § 405(g)).

## STANDARD OF REVIEW

The Commissioner's findings must be upheld if they are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); Choate v. Barnhart, 457 F.3d 865, 869 (8th Cir. 2006); Howard, 255 F.3d at 580. The

2

court reviews the Commissioner's decision to determine if an error of law was committed.   Smith v. Sullivan, 982 F.2d 308, 311 (8th Cir. 1992).   "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion."   Cox v. Barnhart, 471 F.3d 902, 906 (8th Cir. 2006) (internal citation and quotation marks omitted).

The review of a decision to deny benefits is "more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision . . . [the court must also] take into account whatever in the record fairly detracts from that decision."   Reed v. Barnhart, 399 F.3d 917, 920 (8th Cir. 2005) (quoting Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001)).

It is not the role of the court to re-weigh the evidence and, even if this court would decide the case differently, it cannot reverse the Commissioner's decision if that decision is supported by good reason and is based on substantial evidence.   Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005).   A reviewing court may not reverse the Commissioner's decision " 'merely because substantial evidence would have supported an opposite decision.' "   Reed, 399 F.3d at 920 (quoting Shannon v. Chater, 54 F.3d 484, 486 (8th Cir. 1995)). Issues of law are reviewed *de novo* with deference given to the Commissioner's construction of the Social Security Act.   See Smith, 982 F.2d at 311.

The Social Security Administration established a five-step sequential evaluation process for determining whether an individual is disabled and entitled to DI benefits under Title II or SSI benefits under Title XVI.   20 CFR §§ 404.1520(a) and 416.920(a).[2]   If the ALJ determines a claimant is not disabled at any step of the process, the evaluation does not proceed to the next step as the claimant is not disabled.   Id.   The five-step sequential evaluation process is:

> (1) whether the claimant is presently engaged in a "substantial gainful activity"; (2) whether the claimant has a severe impairment—one that significantly limits the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations (if so, the claimant is disabled without regard to age, education, and work experience); (4) whether the claimant has the residual functional capacity to perform . . . past relevant work; and (5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove there are other jobs in the national economy the claimant can perform.

Baker v. Apfel, 159 F.3d 1140, 1143-44 (8th Cir. 1998).   The ALJ applied the five-step sequential evaluation required by the Social Security Administration regulations.   (AR at pp. 23-25).

---

[2]The criteria under 20 CFR § 416.920 are the same under 20 CFR § 404.1520.   Boyd v. Sullivan, 960 F.2d 733, 735 (8th Cir. 1992).   All further references will be to the regulations governing DI benefits, unless otherwise specifically indicated.

**STEP ONE**

At step one, the ALJ determined Mr. McElwain had not been engaged "in substantial gainful activity for a full and continuous 12-month period following the March 11, 2011, alleged disability onset date."   Id. at p. 25.

**STEP TWO**

"At the second step, [the agency] consider[s] the medical severity of your impairment(s)."   20 CFR § 404.1520(a)(4)(ii).   "It is the claimant's burden to establish that [his] impairment or combination of impairments are severe." Kirby v. Astrue, 500 F.3d 705, 707 (8th Cir. 2007).   A severe impairment is defined as one which significantly limits a physical or mental ability to do basic work activities.   20 CFR § 404.1521.   An impairment is not severe, however, if it "amounts to only a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities."   Kirby, 500 F.3d at 707.   "If the impairment would have no more than a minimal effect on the claimant's ability to work, then it does not satisfy the requirement of step two."   Id. (citation omitted).   Additionally, the impairment must have lasted at least twelve months or be expected to result in death.   See 20 CFR § 404.1509.

The ALJ found Mr. McElwain suffered from the following severe impairments: "left clavicle fracture and rotator cuff tear due to motorcycle accident with surgical fixation; degenerative disc disease; obesity; and left eye impairment."   (AR at p. 26) (bold omitted).   Mr. McElwain claims the ALJ erred by not including his depression as a severe impairment.   (Docket 19 at pp. 2-8).

5

The ALJ addressed Mr. McElwain's depression as a mental limitation. (AR at pp. 27-31).   The ALJ first considered a psychological consultative examination conducted by Sara Schilplin, Psy.D., LP, of October 11, 2012.   Id. at pp. 27-30.   Dr. Schilplin diagnosed Mr. McElwain "with depressive disorder, single episode, severe without psychotic features . . . anxiety, NOS, with posttraumatic stress features . . . [and] a global assessment of function (GAF) score of 40 . . . ."   Id. at p. 27.   The ALJ "acknowledge[d] that the GAF of 40[3] would indicate fairly significant dysfunction if considered a valid assessment of the claimant's functioning."   Id. at p. 28.   For reasons discussed below, the ALJ concluded "the overall record does not support a finding that the claimant has more than minimal limitation in his ability to perform basic mental work activities."   Id.   The ALJ concluded the mental impairment was "nonsevere." Id. at p. 31.

The ALJ rejected Dr. Schilplin's conclusions for a number of reasons. First, the ALJ concluded "the GAF score of 40 . . . appears to have been made on

[3]GAF is a numeric rating, on a scale of 0 to 100, used to rate subjectively an individual's "overall level of functioning" by rating symptom severity and social, occupational, or psychological functioning.   See American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders, "Axis V: Global Assessment of Functioning" at Axis V: Global Assessment of Functioning" at *34 (DSM-IV-TR 2000).   Where the symptom severity and level of functioning are discordant, the GAF rating reflects the worst of the two.   Id.   GAF ratings represent current levels of functioning "because ratings of current functioning will generally reflect the need for treatment or care."   Id.   "A GAF of 31 through 40 is characterized by some impairment in reality testing or communication or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood."   Halverson v. Astrue, 600 F.3d 922, 927 n.5 (8th Cir. 2010) (internal citation omitted).

fundamentally false pretenses." Id. at p. 29. "Despite having worked fairly steadily over the six months prior to the evaluation with Dr. Schilplin, the claimant apparently failed to mention the work." Id. The ALJ noted Mr. McElwain "told Dr. Schilplin that he had been fundamentally debilitated from both a physical and mental standpoint since March 2011 essential inability [sic] to function at all including basic activities of daily living . . . [he] reported that he had to rely on his elderly mother and his son to take care of him including tending top [sic] basic needs such as cooking and cleaning . . . [and] that since the accident he had been able to do little else than rest in a recliner or in his bed . . . ." Id. (references to administrative record omitted). The ALJ found claimant's report to Dr. Schilplin "clearly less than fully credible particularly given that he had been working at substantial gainful activity levels over the past 6 months leading up to the evaluation." Id. The ALJ concluded "the fact that the claimant apparently failed to mention his recent work to Dr. Schilplin creates serious credulity [sic] problems." Id. at p. 30.

The ALJ discredited Mr. McElwain's statements to Dr. Schilplin that "before the accident he had worked consistently throughout his life and had been a business owner . . . [but now he was] feeling depressed . . . ." Id. at p. 29. The ALJ found the record reflected Mr. McElwain did "have some years . . . wherein . . . he generated substantial gainful activity level earnings . . . . However, [he] did not generate substantial gainful activity level income over most years since 1998,

7

including 6 years with either no earnings or earnings of less than $1000.00 for the entire year." Id. (references to the administrative record omitted).

The ALJ found the medical care Mr. McElwain received after the evaluation by Dr. Schilplin "does not reflect much in the way of mental health complaints or of objective findings to indicate more than mild mental limitations." Id. at p. 30. The ALJ chose to give great weight to the state agency psychology consultants and the psychiatric review of Thomas Atkin, Psy.D., of February 3, 2014. Id. at p. 31. Dr. Atkin found "no severe mental impairment." Id. He and the state consultants found "no more than mild limitation in any area of basic mental functioning." Id.

Mr. McElwain argues the ALJ erred in rejecting Dr. Schilplin's diagnosis.

The fact that Schilplin was not aware of . . . *unsuccessful* work attempts which led to *increased* depression is really of little consequence. What *is* of consequence is that a trained mental health provider was able to spend a great deal of time with McElwain and give the ALJ the benefit of her expertise. Her opinions, coupled with McElwain's testimony, letter to the Social Security Administration in January of 2013, function report in February of 2013 and mental health treatment in late 2013 combine to show that McElwain had a severe mental impairment which caused more than "minimal limitation in his ability to perform basic mental work activities."

(Docket 19 at p. 8) (emphasis in original).

Mr. McElwain did not disclose to Dr. Schilplin that he had worked for his brother-in-law at the Price Mining Service running a pressure washer from April 2012 through June 2012, earning $9,000. (Docket 16 ¶ 101). It is unclear from the record whether the job ended or Mr. McElwain quit because he was not

8

able to do the work.   During the third quarter of 2012, Mr. McElwain earned $3,800 selling t-shirts for a vendor during the Sturgis Motorcycle Rally.   Id. ¶ 104.   This was temporary work.   While Mr. McElwain may have experienced physical discomfort while performing these work tasks, his failure to disclose this work activity to Dr. Schilplin was an important factor which the ALJ could consider in judging the weight to give to the psychologist's diagnosis and conclusions.

While Mr. McElwain's self-reports about his mental health through his functional reports and testimony at the administrative hearing may support his claim of severe depression, the ALJ was entitled to judge his credibility in light of the time-relevant medical records.   On December 8, 2012, Mr. McElwain saw the orthopedic surgeon who treated him after his 2011 motorcycle accident. (Docket 16 ¶18).   While Dr. Heiner discussed Mr. McElwain's physical recovery, there was no mention of any mental health issues.   Id. at ¶¶ 18-19.   When Dr. Heiner saw him again on December 3, 2013, there was again no mention of any mental health complaints.   Id. at ¶¶ 20-22.   The only limitation Dr. Heiner placed on Mr. McElwain for future work was that it should "be a desk-type position or something with a low demand with respect to the shoulder as far as overhead activities."   Id. ¶ 22.

During 2013, Mr. McElwain saw the medical staff at the Parker Indian Health Center five times.   Id. ¶¶ 37-44.   During two of these visits he made no mention of depression or other mental health issues.   Id. ¶ 37 & 43.   During a

9

October 31, 2013, examination Mr. McElwain mentioned having difficulty sleeping because of depression and taking his wife's medications as a sleep aid. Id. ¶ 38.   His depression screening was positive, but the mental status exam noted he was "oriented to person, place and time period.   Mood and affect normal.   Memory normal, judgment normal."   Id. ¶¶ 39-40.   He was given Clonazapam for depression and to control anxiety.   Id. ¶ 41.   On December 6, 2013, Mr. McElwain's pain medications and Clonazapam, for anxiety, were renewed at the Parker clinic.   Id. ¶ 42.   On December 30, 2013, a mental status exam found Mr. McElwain "alert and oriented times three, well developed, well nourished, and in no acute distress and was in good spirits . . . he was oriented to person, place, and time, his mood and affect were normal, his memory was normal and his judgment was normal."   Id. ¶ 43.   On March 24, 2014, the Parker clinic "prescribed Gabapentin for chronic pain, Clonazapam for anxiety, Tramadol for pain, and Fluoxetine for depression."[4]   Id. ¶ 44.

While the Parker Indian Health Service records support Dr. Schilplin's conclusion Mr. Parker suffered from anxiety and depression, they do not rise to the level of evidencing a severe impairment "which significantly limits . . . mental ability to do basic work activities."   20 CFR § 404.1521.   "Impairments that are controllable or amenable to treatment do not support a finding of total disability." Hutton v. Apfel, 175 F.3d 651, 655 (8th Cir. 1999).

---

[4]This medical record was submitted to the Appeals Council after the ALJ's decision was issued.   (Docket 16 ¶ 44 n.1).   Mr. McElwain does not argue this later report is significantly different from the records examined by the ALJ. (Dockets 19 & 21).

On November 13, 2012, Doug Soule, Ph.D., a state agency psychologist, reviewed Mr. McElwain's records and concluded his restriction of activities of daily living were mild, his difficulties in maintaining social functioning were mild, his difficulties in maintaining concentration, persistence or pace were mild, and he had no repeated episodes of extended duration decompensation.   (Docket 16 ¶ 54).   On March 5, 2013, S. Richard Gunn, Ph.D., another state agency psychologist, reviewed Mr. McElwain's records and opined that Mr. McElwain had only mild restriction of activities of daily living, maintained social functioning, and maintained concentration, persistence, or pace, and had no repeated episodes of extended duration decompensation.   Id. ¶ 57.   On February 3, 2014, after reviewing Mr. McElwain's file, Thomas Atkin, Psy.D., completed a Psychiatric Review Technique form.   Id. ¶ 59.   Dr. Atkin found Mr. McElwain had no restrictions of activities of daily living, mild difficulties in maintaining social functioning, mild difficulties in maintaining concentration, persistence, or pace, and no episodes of extended duration decompensation.   Id. ¶ 60.   Dr. Atkin concluded "[n]o ongoing limitation secondary to Depression and/or Anxiety are noted in treatment records and only a two month period of treatment is documented with positive results."   Id. ¶ 61.

The ALJ rejected the opinion of Dr. Schilplin that Mr. McElwain had a severe depressive disorder, concluding "the overall record does not support a finding that the claimant has more than minimal limitation in his ability to perform basic mental work activities."   (AR at p. 28).   The ALJ gave "great

weight to the state agency psychological consultants' assessments . . . indicating no more than mild limitation in any area of basic mental functioning . . . . [and] great weight to the recent psychiatric review technique form completed by Dr. Thomas Atkin . . . [of] February 3, 2014."   (AR at p. 31).

The court finds there is ample evidence in the record to support the ALJ's conclusion that Mr. Mr. McElwain's depression was not severe.     Rather, the evidence supports a finding depression did not significantly limit his physical or mental ability to do basic work activities.

Mr. McElwain asserts the ALJ erred by not ordering a second psychological consulting examination after the administrative hearing.   (Docket 19 at pp. 9-13).   He argues his "psychological condition worsened after his unsuccessful work attempt in 2012 and was not helped appreciably by medications in late 2013 and early 2014.   Given this evidence, the ALJ did not have 'sufficient medical evidence about an impairment . . . to determine whether the claimant is disabled.' "   Id. at p. 12 (citing 20 CFR § 416.917; emphasis omitted).   Mr. McElwain claims he sought psychological treatment in the months prior to the administrative hearing and "continued to complain . . . of significant symptoms of depression, despite taking medications . . . ."   Id. at p. 13 (emphasis omitted).   Because of this development, Mr. McElwain argues "the ALJ [should have] order[ed] another consultative examination to assess [claimant's] long term psychological condition."   Id.

Where the record is sufficient to determine if a claimant is disabled, no additional examinations are required.   Johnson v. Astrue, 627 F.3d 316, 320 (8th Cir. 2010) ("[t]he ALJ is required to order medical examinations and tests only if the medical records presented to him do not give sufficient medical evidence to determine whether the claimant is disabled.") (internal citation omitted).

From the Parker Clinic note of December 30, 2013, it is evident that Mr. McElwain's medications were successful in keeping his depression under control.   That mental status exam found Mr. McElwain "alert and oriented times three, well developed, well nourished, and in no acute distress and was in good spirits . . . he was oriented to person, place, and time, his mood and affect were normal, his memory was normal and his judgment was normal."   (Docket 16 ¶ 43).   Simply because his medications were extended during the March 2014 visit does not change the conclusion that Mr. McElwain's medications for anxiety and depression were working well.

The medical records within the administrative record were sufficient to allow the ALJ to make a disability determination.   The ALJ was not required to order a second psychological evaluation.   Johnson, 627 F.3d at 320.

The court finds substantial evidence in the record supports the ALJ's conclusion that Mr. McElwain's mental impairments caused "no more than 'mild' limitations in any of the first three functional areas and 'no' episodes of decompensation which have been of extended duration in the fourth area."   (AR

13

at p. 31).   As a result, the court finds the ALJ did not err at step two of the sequential evaluation.   <u>Kirby</u>, 500 F.3d at 707.

**STEP THREE**

At step three, the ALJ determines whether claimant's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 ("Appendix 1"). 20 CFR §§ 404.1520(d), 404.1525, and 404.1526.   If a claimant's impairment or combination of impairments meets or medically equals the criteria for one of the impairments listed and meets the duration requirement of 20 CFR § 404.1509, the claimant is considered disabled.   A claimant has the burden of proving an impairment or combination of impairments meet or equals a listing within Appendix 1.   <u>Johnson v. Barnhart</u>, 390 F.3d 1067, 1070 (8th Cir. 2004).   If a claimant's impairment or combination of impairments meets or medically equals the criteria for one of the impairments listed and meets the duration requirement of 20 CFR § 404.1509, claimant is considered disabled.   If not covered by these criteria, the analysis is not over, and the ALJ proceeds to the next step.

At step three, the ALJ found Mr. McElwian's severe impairments did not qualify either individually or collectively to meet or equal a listed impairment in Appendix 1.   (AR at p. 31).   Mr. McElwain does not challenge this finding or argue in the alternative that if his depression is classified as "severe," he would qualify for disability at step three.   (Docket 19).

14

## STEP FOUR

Before considering step four of the evaluation process, the ALJ is required to determine a claimant's residual functional capacity ("RFC").   20 CFR § 404.1520(e).   RFC is a claimant's ability to do physical and mental work activities on a sustained basis despite any limitations from his impairments. 20 CFR § 404.1545(a)(1).   In making this finding, the ALJ must consider all of the claimant's impairments, including those which are not severe.   20 CFR § 404.1545(e).   All of the relevant medical and non-medical evidence in the record must be considered.   20 CFR §§ 404.1520(e) and 404.1545.   "The ALJ should determine a claimant's RFC based on all the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations."   Lacroix v. Barnhart, 465 F.3d 881, 887 (8th Cir. 2006) (quoting Strongson v. Barnhart, 361 F.3d 1066, 1070 (8th Cir. 2004)); see also Cox v. Astrue, 495 F.3d 614, 619 (8th Cir. 2007) (because RFC is a medical question, the ALJ's decision must be supported by some medical evidence of a claimant's ability to function in the workplace, but the ALJ may consider non-medical evidence as well); Guilliams, 393 F.3d at 803 ("RFC is a medical question, and an ALJ's finding must be supported by some medical evidence.").   The ALJ "still 'bears the primary responsibility for assessing a claimant's residual functional capacity based on all relevant evidence.' "   Id. (quoting Roberts v. Apfel, 222 F.3d 466, 469 (8th Cir. 2000)).

15

"In determining RFC, the ALJ must consider the effects of the combination of both physical and mental impairments."   Stormo v. Barnhart, 377 F.3d 801, 807 (8th Cir. 2004) (citing Baldwin v. Barnhart, 349 F.3d 549, 556 (8th Cir. 2003)).   As stated earlier in this discussion, a severe impairment is one which significantly limits an individual's physical or mental ability to do basic work activities.   20 CFR § 404.1521(a).

The ALJ found Mr. McElwain's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." (AR at p. 33).   The court is to "defer to an ALJ's credibility finding as long as the 'ALJ explicitly discredits a claimant's testimony and gives a good reason for doing so.'"   Schultz v. Astrue, 479 F.3d 979, 983 (8th Cir. 2007) (quoting Hogan v. Apfel, 239 F.3d 958, 962 (8th Cir. 2001)).

Mr. McElwain argues the ALJ erred in discrediting his testimony because "[t]here is no evidence . . . that he had health insurance to cover any form of counseling or medications and so he was reliant on the Indian Health Service Facilities." (Docket 19 at p. 14).   Mr. McElwain received the medications prescribed through the Parker Clinic, an Indian Health Service facility.   See Docket 16 ¶ 44.   Contrary to Mr. McElwain's testimony at the administrative hearing on February 4, 2014, that he suffered a "drug hangover" because of his medications, he never discussed the issue with his health care providers in 2013 or after the 2014 hearing.   Compare id. ¶¶ 36-44 & 99.

16

As recently as December 3, 2013, during a clinical visit, Mr. McElwain's orthopedic surgeon, Dr. Heiner, concluded "[t]he kind of employment he would be best suited for would be a desk-type position or something with a low demand with respect to the shoulder as far as overhead activities."   Id. ¶ 22.   Mr. McElwain never mentioned to Dr. Heiner any significant anxiety, depression, or medication issue which would interfere with his ability to perform basic work activities.

The ALJ questioned Mr. McElwain's less than "positive overall work record."   (AR at p. 36).   While recognizing Mr. McElwain's "substantial gainful activity levels" from 1993 until September 2009, the ALJ noted some periods during this time frame with no income from self-employment as a welder.   Id. The ALJ then noted Mr. McElwain's "substantial gainful activity" in 2010 until the motorcycle accident of March 11, 2011.   Id.

Mr. McElwain challenges the ALJ's analysis by arguing the absence of profits does not mean he did not "work or [had] a poor work ethic."   (Docket 19 at p. 17).   He asserts that if the ALJ had asked, Mr. McElwain would have proven that "self employment income does not necessarily correlate with hours worked, as start up costs, depreciation, business expenses, etc., must be factored in to the analysis."   Id.

But the claimant bears the burden of persuasion through step four of the disability analysis.   Baker, 159 F.3d at 1144.   To discount Mr. McElwain's

reported lack of income, the ALJ would have to speculate as to the business accounting practices required to arrive at those income figures.

The ALJ noted that despite a claim of being disabled, Mr. McElwain earned almost $13,000 in 2012 and then applied for unemployment benefits.   (AR at pp. 34 & 36).   The ALJ observed "the receipt of unemployment compensation, while not dispositive, is not consistent with a simultaneous allegation of disability."   (AR at p. 34).   The ALJ properly considered the fact that Mr. McElwain received unemployment benefits in 2012, after the date of his alleged onset of disability.   Applying for unemployment compensation adversely affects credibility.   Jernigan v. Sullivan, 948 F.2d 1070, 1074 (8th Cir. 1991).   "[B]y applying for unemployment compensation benefits . . . an applicant must hold himself out as available, willing and able to work."   Id.   "Because his application necessarily indicates that [he] was able to work, this may be some evidence, although not conclusive, to negate his claim that he was disabled prior to [March 11, 2011]."   Id.

"The ALJ is in the best position to determine the credibility of the testimony and is granted deference in that regard."   Johnson v. Apfel, 240 F.3d 1145, 1147 (8th Cir. 2001) (referencing Polaski v. Heckler, 739 F.2d 1320 (8th Cir.1984)).   "Where adequately explained and supported, credibility findings are for the ALJ to make."   Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000).   The court must "defer to an ALJ's credibility finding as long as the ALJ explicitly discredits a claimant's testimony and gives a good reason for doing so."

18

Schultz, 479 F.3d at 983 (internal quotation marks and citations omitted).   The

role of the court is not to re-weigh the evidence and it may not reverse an ALJ's

credibility findings because an opposite result may also be supported by

substantial evidence.   Guilliams, 393 F.3d at 801; Reed, 399 F.3d at 920.   The

court's role is to determine whether the ALJ's decision is supported by good

reason and by substantial evidence.   Guilliams, 393 F.3d at 801.   The ALJ's

conclusion on credibility is supported by substantial evidence in the record.   Id.

Mr. McElwain makes no other evidentiary challenges to the ALJ's finding

of his RFC.   (Docket 19).   The ALJ found Mr. McElwain retained "the residual

functional capacity to perform light work."[5]   (AR at p. 31) (bold omitted)

(referencing 20 CFR § 404.1567(b)).   The ALJ based this conclusion on Mr.

McElwain's limitations.

> The claimant can lift and/or carry 20 pounds occasionally and
> 10 pounds frequently.   The claimant can stand and/or walk (with
> normal breaks) for a total of about 6 hours in an 8-hour workday.
> The claimant can sit (with normal breaks) for a total of about 6
> hour's in an 8-hour workday.   The claimant is unlimited, other
> than shown for lift and/or carry, in the ability to push and/or pull
> (including operation of hand and/or foot controls).   The claimant is
> able to     occasionally     climb     ramps/stairs     and
> ladders/ropes/scaffolds.   The claimant is able to occasionally

---

[5]"Light work involves lifting no more than 20 pounds at a time with
frequent lifting or carrying of objects weighing up to 10 pounds.   Even though
the weight lifted may be very little, a job is in this category when it requires a
good deal of walking or standing, or when it involves sitting most of the time with
some pushing and pulling of arm or leg controls.   To be considered capable of
performing a full or wide range of light work, you must have the ability to do
substantially all of these activities.   If someone can do light work, we determine
that he or she can also do sedentary work, unless there are additional limiting
factors such as loss of fine dexterity or inability to sit for long periods of time."
20 CFR § 404.1567(b).

stoop, kneel, crouch, and crawl.   The claimant is unlimited in terms
of balancing.   The claimant has no limitations in terms of handling,
fingering, and feeling.   The claimant has no limitations concerning
reaching with the 1ight upper extremity.   The claimant is limited to
occasional overhead reaching with the left upper extremity.   The
claimant has no visual limitations in terms of depth perception,
accommodation, color vision, or field of vision.   The claimant has
some left eye limitations with near acuity and far acuity.   However,
the claimant can see well enough to drive and to read a newspaper.
The claimant has no communicative or environmental limitations.

Id. at pp. 31-32 (bold omitted).

### **STEP FIVE**

The "burden of production shifts to the Commissioner at step five."

Stormo, 377 F.3d at 806.   Bill Tysdal, a vocational specialist, testified at the

administrative hearing.   (Docket 16 ¶ 105).   Mr. Tysdal found that when

applying the RFC for light work with occasional stooping, bending, crouching,

crawling and with "limited vision," a person could perform work as a

cleaner/housekeeper, inserting machine operator, or cafeteria attendant.   Id.

Based on the testimony of Mr. Tysdal, the ALJ concluded Mr. McElwain

was not disabled.   (AR at p. 39).   "[C]onsidering the claimant's age, education,

work experience, and residual functional capacity, the claimant is capable of

making a successful adjustment to other work that exist in significant numbers

in the national economy."   Id.

Mr. McElwain claims the ALJ erred because "[e]ven assuming that the ALJ

correctly rejected Claimant's depression symptoms and his reported side effects

from pain medications, the ALJ erred because the hypothetical question given to

vocational expert Tysdal did not capture the 'concrete consequences' of

20

McElwain's vision impairments." (Docket 19 at p. 19) (emphasis omitted). Mr. McElwain argues his vision difficulties are far more significant than represented in the hypothetical question posed to Mr. Tysdal. Mr. McElwain points out "[h]e testified that he can read for half an hour and then has to stop because his eyes strain too much and he gets headaches. . . . He testified after reading even large print for half an hour he would need to take about a 45 minute to one hour break to 'let things subside a little bit' and then would be able to 'go back and read for another half hour.' " Id. at p. 20 (referencing Docket 16 ¶ 91). Mr. McElwain argues the hypothetical question was deficient because "[t]he occupations identified by vocational expert Tysdal—cleaner/housekeeper, inserting machine operator and cafeteria attendant—surely require good vision in order to perform work tasks throughout the work day and not just for a half hour at a time, interspersed with breaks to 'let things subside a little bit.' " Id. (emphasis omitted).

"The hypothetical question posed to the vocational expert must capture the concrete consequences of [the] claimant's deficiencies." Johnson v. Apfel, 240 F.3d 1145, 1148 (8th Cir. 2001) (internal quotation marks and citation omitted). The record referenced in the ALJ's hypothetical question regarding claimant's vision was the summary provided by Dr. Tom Burkhardt. See AR at p. 59; Dockets 16 ¶ 58; and 19 at p. 20. Dr. Burkhardt described Mr. McElwain's left eye vision as " 'limited' in near acuity and far acuity." (Docket 16 ¶ 58). The ALJ then expanded the explanation of this limited vision restriction by adding to the hypothetical question the following: "Regarding the

21

vision, he can see well enough to drive and read a paper . . . but he has the other visual limitation."   (AR at p. 59).

Mr. McElwain's blurriness or lack of clarity in his left eye vision was properly accounted for in the hypothetical question posed to Mr. Tysdal. Johnson, 240 F.3d at 1148.   Mr. McElwain cites to no evidence in the Dictionary of Occupational Titles referenced by Mr. Tysdal which would require a greater range of vision than described by Dr. Burkhardt for a hypothetical individual similar to Mr. McElwain.

The hypothetical question and the vocational expert's answer to the hypothetical question constitute substantial evidence supporting the ALJ's determination Mr. McElwain was not disabled.   Lacroix, 465 F.3d at 889.   The ALJ's decision is free of reversible error.   Smith, 982 F.2d at 311.

## ORDER

Based on the foregoing discussion, the court finds the ALJ's decision is supported by substantial evidence on the record as a whole.   Accordingly, it is hereby

ORDERED that plaintiff's motion to reverse the decision of the Commissioner (Docket 19) is denied.

Dated March 27, 2017.

BY THE COURT:

/s/ *Jeffrey L. Viken*

JEFFREY L. VIKEN
CHIEF JUDGE

22